GRAND RAPIDS CITY COACH LINES,
Inc., a Michigan corporation,
Plaintiff,

v.

Robert G. HOWLETT, Donald V. Carey
and Henry J. Van Wolvlear, individually
and as members of a special commission
appointed pursuant to the Michigan La-
bor Mediation Act, so-called, Defend-
ants.

Civ. A. No. 2859.

United States District Court
W. D. Michigan, S. D.

Dec. 16, 1955.

**668**

Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiff.

Thomas M. Kavanagh, Atty. Gen., of Michigan, for the Board.

Morse & Kleiner, Grand Rapids, Mich., for intervenors.

KENT, District Judge.

The plaintiff, Grand Rapids City Coach Lines, Inc., has filed a complaint and asks for a temporary restraining order, a temporary injunction, and a permanent injunction to restrain the defendants from entering upon or conducting any hearings, proceedings, or investigations pursuant to the Statutes of the State of Michigan.[1] A temporary restraining order was granted and an order to show cause was issued requiring the defendants to appear and show cause why they should not be enjoined, individually and as a statutory special commission,

from entering upon the duties outlined in the cited statute.

Defendants appeared by the Attorney General of Michigan, Thomas M. Kavanagh, and by Robert A. Siegrist, Assistant Attorney General. Defendants filed a motion to dismiss the complaint and an answer. Also an appearance was filed on behalf of Division 836, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, A.F.L., the Union which represents the employees of the plaintiff company. The Union also filed a motion for leave to intervene which motion was denied because of failure to comply with the provisions of Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.

From the proofs produced by the plaintiff on the hearing relative to the issuance of a temporary injunction and from the pleadings, the Court is satisfied of the following facts. The plaintiff is a Michigan corporation having its principal place of business in the City of Grand Rapids, Kent County, Michigan. The company is engaged in the business of operating the bus system in the City of Grand Rapids as the only means of mass transportation of passengers in the City of Grand Rapids and contiguous areas and communities. The plaintiff through its operation of a bus system serves a large number of industries, including, Lear, Inc.; Aircraft Division of General Motors Corporation; Corduroy Rubber Company; Doehler-Jarvis Division of National Lead Company; Stowe-Davis Furniture Company; American Seating Company; General Motors Corporation, Diesel Equipment Division; Steelcase, Inc.; Kelvinator Division of American Motors Corp.; American Excelsior Corporation; American Box Board Company, and numerous other industries in the Grand Rapids area.

The Court takes judicial knowledge of the fact that the industries named and many other industries served by the plaintiff are actively engaged in

1. Michigan Statutes Annotated 17.454(1) et seq., Comp.Laws 1948, § 423.1 et seq., Comp. Laws Supp.1954, § 423.2 et seq.

interstate commerce within the meaning of the Labor Management Relations Act of 1947.[2]

Briefs have been filed on behalf of the plaintiff and the defendant. The Union participated in the hearing through its counsel and was extended an invitation to file a brief amicus curiae which invitation was not accepted for reasons not pertinent to this opinion.

The plaintiff and the above named Union prior to December 1, 1955, had been engaged in negotiations for a new contract. The parties were unable to agree after extended negotiations with the assistance of representatives of the Michigan Labor Mediation Board. Pursuant to the Michigan Statute[3] the Michigan Labor Mediation Board certified the dispute to the Governor of Michigan as a dispute involving a public utility, apparently after concluding as provided by Statute[4] that the parties would not be able to settle their dispute by bargaining, mediation and conciliation, the parties having refused to submit to arbitration. Thereafter the Governor of the State of Michigan appointed the defendants as a Special Commission.[5] The powers and duties of the Special Commission are outlined in the Michigan Statute.[6]

This Special Commission has authority to require the parties to appear, hold hearings, it is not bound by the rules of evidence, it has subpoena power and may invoke the aid of a Circuit Court to punish for contempt of court for refusal to obey a subpoena, refusal to be sworn or testify, or for contemptuous conduct during the course of the hearing. The Special Commission is authorized and required under the provisions of the statute to make just and reasonable findings and *recommendations*. The Commission is required to file its findings and recommendations with the Governor of the State of Michigan and the Governor is required to make such report and recommendations public. The statute then provides:

> "The parties shall thereupon, and for a period of 10 days following the filing with the governor of the report of the special commission, *resume collective bargaining*, and shall in good faith attempt to settle their disputes by this means". (Emphasis supplied.)[7]

Other provisions of the statute require that existing wages, hours, and other terms and conditions of employment shall remain static during the pendency of the proceedings.[8] And the statute makes any lock-out, strike, work stoppage, slow-down, and other such activities illegal until the termination of the activities of the Special Commission and for 10 days thereafter.[9]

It is the claim of the plaintiff that the Bus Company is engaged in activities which "affect interstate commerce" within the meaning of the Labor Management Relations Act of 1947, because of the services which it renders to the companies in the area which are engaged in interstate commerce. It is the claim of the plaintiff that since the activities of the Bus Company "affect interstate commerce" that necessarily the plaintiff is subject to the Labor Management Relations Act of 1947 and is required and entitled to proceed in accordance with the provisions of that Act.

Plaintiff claims that Congress having legislated on the subject that a state

---

2. 29 U.S.C.A. § 141 et seq.

3. M.S.A. 17.454(14.2), Comp.Laws Supp. 1954, § 423.13a.

4. M.S.A. 17.454(14.2), (3) (b), Comp. Laws Supp.1954, § 423.13a(3) (b).

5. M.S.A. 17.454(14.3), Comp.Laws Supp. 1954, § 423.13b.

6. M.S.A. 17.454(14.3) (14.4) (14.5) (14.6), Comp.Laws Supp.1954, §§ 423.-13b–423.13e.

7. M.S.A. 17.454(14.6) (2), Comp.Laws Supp.1954, § 423.13e(2).

8. M.S.A. 17.454(14.7), Comp.Laws Supp. 1954, § 423.13f.

9. M.S.A. 17.454(14.8), Comp.Laws Supp. 1954, § 423.13g.

agency or commission created by the action of the state legislature has no jurisdiction of any matters having to do with the labor relations of the plaintiff company, the activities of which "affect interstate commerce".

The defendants and the Union here involved have not strongly urged that the plaintiff's activities do not affect interstate commerce within the meaning of the Labor Management Relations Act of 1947. Rather it is the claim of the defendants and the Union that the entire field of labor relations is within the jurisdiction of the National Labor Relations Board and that this Court has no authority nor jurisdiction to entertain a controversy involving labor relations in an industry whose activities affect interstate commerce except upon petition of the National Labor Relations Board.

It is further the theory of the Attorney General of the State of Michigan that this Court should require the plaintiff to exhaust its state court remedies and thereafter appeal to the United States Supreme Court. It is the theory and claim of the Attorney General of the State of Michigan that this United States District Court has no jurisdiction to enjoin the actions of a commission appointed by the Governor of the State of Michigan such as here involved.

Plaintiff claims that the Labor Management Relations Act of 1947 is an Act which regulates commerce and that this Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1337.[10]

The defendants also assert that it would not be proper under circumstances such as outlined here for this Court to restrain the activities of the defendant Special Commission, regardless of the jurisdiction of such Commission where the activities of the industry involved affect interstate commerce.

There has also been a suggestion in open court that a constitutional question has been raised by the plaintiff and that a Three-Judge Court should hear the controversy as provided in 28 U.S.C. § 2281.

After hearing it was agreed by all parties that the defendant Special Commission would take no further steps until this Court could render an opinion relative to the issuance of a preliminary injunction.

■ This Court is satisfied that the complaint of the plaintiff does not raise a question as to the constitutionality of the Michigan Statute here involved. Plaintiff's theory is that Congress has pre-empted the regulation of labor relations as to companies whose activities affect interstate commerce. The Court is satisfied that the determination of the constitutionality of the Michigan Statute involved is not required in this case. This same question was considered by the Court of Appeals for the 7th Circuit, Board of Trade of City of Chicago v. Illinois Commerce Commission, 156 F.2d 33, wherein the Court stated at page 36:

"§ 266 of the Judicial Code must be complied with only where the injunction is sought 'upon the ground of the unconstitutionality of such statute,' and § 24(1) of the Judicial Code inhibits a federal court from taking jurisdiction where it is sought to enjoin the action of an administrative board, etc., where jurisdiction is based 'solely upon the ground of diversity of citizenship, or the repugnance of such order to the Constitution of the United States.' It appears evident that neither of these provisions is controlling. Moreover, in the recent case of Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 786, 62 S. Ct. 491, 86 L.Ed. 754, the complaint alleged, as in the instant case, that the federal statute pre-empted and occupied the field so as to deprive the state agency of jurisdiction. The case was heard by a single judge.

10. 28 U.S.C. § 1337: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The jurisdictional question was raised in the Court of Appeals, 5 Cir., 116 F.2d 227, 230, wherein the court stated: 'The suit was not one for three judges. It did not attack the constitutionality of the Alabama statutes, it affirmed their constitutionality.' The Supreme Court (315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754) decided the case on its merits without reference to the jurisdictional question. See also Ex parte Bransford, 310 U.S. 354, 358, 60 S.Ct. 947, 84 L.Ed. 1249; Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036; and Ex parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353."

Reversed in part and affirmed in part and remanded to the District Court. Rice v. Board of Trade of City of Chicago, 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447.

Before proceeding with this case the Court should be satisfied that it has jurisdiction over the subject matter. On this subject the Supreme Court of the United States in Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 391, 71 S.Ct. 359, 363, 95 L.Ed. 364, has said:

"Ever since the question was fully argued and decided in Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, it has been clear that federal labor legislation, encompassing as it does all industries 'affecting commerce,' applies to a privately owned public utility whose business and activities are carried on wholly within a single state. The courts of appeal have uniformly held enterprises similar to and no more important to interstate commerce than the Milwaukee gas and transit companies before us in these cases subject to the provisions of the federal labor law."

The same issue has been considered by this Court in S. E. Overton Co. v. International Brotherhood, etc., D.C., 115 F.Supp. 764, where the Court, speaking through Chief Judge Raymond W. Starr, said at page 773:

"The Supreme Court of the United States has repeatedly held that Congress by its legislation has preempted the field of labor relations as regards interstate commerce, except in those instances where States have expressly and definitely legislated upon points of activity not within the purview of the Labor Management Relations Act. See International Union of United Automobile [Aircraft and Agricultural Implement] Workers of America v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978; Plankinton Packing Co. v. Wisconsin Employment Relations Board, 338 U.S. 953, 70 S.Ct. 491, 94 L.Ed. 588; La Crosse Telephone Corporation v. Wisconsin Employment Relations Board, 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Hill v. State of Florida ex rel. Watson, Attorney General, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782."

From the cases cited in those opinions this Court is satisfied that it has jurisdiction of the subject matter in this controversy under the provisions of 28 U.S.C. § 1337. As was said in Rice v. Santa Fe Elevator Corp., 331 U.S. 236, 67 S.Ct. 1155:

"The test, therefore, is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the State."

Also in Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 390, 71 S. Ct. 359, 363, 95 L.Ed. 364, the Court

quoting with approval from International Union of United Automobile, Aircraft and Agricultural Implement Workers v. O'Brien, 339 U.S. 454, 457, 70 S. Ct. 781, 94 L.Ed. 978:

"'None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation. Plankinton Packing Co. v. Wisconsin [Employment Relations] Board, 1950, 338 U.S. 953, 70 S.Ct. 491 [94 L.Ed. 588]; La Crosse Telephone Corp. v. Wisconsin [Employment Relations] Board, 1949, 336 U. S. 18, 69 S.Ct. 379 (93 L.Ed. 463); Bethlehem Steel Co. v. New York Labor Relations Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Hill v. State of Florida ex rel. Watson, 1945, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782.'"

Had the Congress intended that public utilities whose activities affect interstate commerce should be required to submit to a fact-finding panel as here involved it could have so provided or it could have reserved that right to the States. As was said by the court in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 501, 74 S.Ct. 161, 171, 98 L.Ed. 228:

"Of course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit."

The Congress has not felt it necessary or proper to reserve or delegate to the States jurisdiction over labor disputes where local public utilities whose activities affect interstate commerce are involved, except as provided by the Act itself, 29 U.S.C.A. § 160(a).

There is no claim that the Board has ceded any jurisdiction over a controversy such as this to the State of Michigan. When Congress is satisfied that the procedure required by the Michigan Act is appropriate and necessary in resolving labor disputes in which public utilities are involved, then Congress should make such provision. That power is not given to the legislatures of the several States nor to the District Courts of the United States.

The Court is satisfied that the statutory powers and duties given to the defendant Commission are in conflict with the Labor Management Relations Act of 1947. As was said in Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, supra, 340 U.S. at page 388, 71 S.Ct. at page 362:

"In summary, the act substitutes arbitration upon order of the Board for collective bargaining whenever an impasse is reached in the bargaining process. And, to insure conformity with the statutory scheme, Wisconsin denies to utility employees the right to strike."

Arbitration has been defined in Bouvier's Law Dictionary, Library Edition, 1928, Vol. 1, p. 31,* as:

"The investigation and determination of a matter or matters of difference between contending parties, by one or more unofficial persons, chosen by the parties, and called arbitrators or referees.

"Compulsory arbitration is that which takes place when the consent of one of the parties is enforced by statutory provision."

This Court is unable to find any substantial difference between the compulsory arbitration which was determined to be improper by the Supreme Court in Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, supra, and the fact-finding and recommendation function of the Michigan Board *except* the decision of the Arbitration Board in Wisconsin was final. Wisc.Stat.1949, § 111.55.

The defendants have called the Court's attention to several decisions, including

---

* See 1 Bouvier's Law Dictionary, Rawle's Third Revision, p. 225.

Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452; Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364; Capital Service, Inc., v. National Labor Relations Board, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887; Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Direct Transit Lines v. Starr, 6 Cir., 219 F.2d 699. Defendants are of the opinion that as a result of these decisions this District Court has no jurisdiction to entertain any matter in the labor relations field except on petition of the Labor Board. With this position the Court cannot agree. The cases cited involved "unfair labor practices" which are not here involved.

Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, which the defendants cite as authority for the theory that 28 U.S.C. § 1337 is not a grant of jurisdiction over matters involving labor disputes, is not so read by this Court. We are satisfied that that case decided only that 28 U.S.C. § 2283 applied to the facts of that case. As was said in Capital Service, Inc., v. National Labor Relations Board, supra, 347 U.S. at page 504, 74 S.Ct. at page 702:

"The District Court had jurisdiction of the subject matter, because this is a 'civil action or proceeding' arising under an Act of Congress 'regulating commerce.' 28 U.S.C. § 1337, 28 U.S.C.A. § 1337. The National Labor Relations Act is a law 'regulating commerce'. (National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893); and here, as in American Federation of Labor v. Watson, 327 U.S. 582, 591, 66 S. Ct. 761, 765, 90 L.Ed. 873, the rights asserted arise under that law."

Defendants and the Union take the position that this Court is without jurisdiction to enjoin a state commission until the plaintiff has exhausted its state remedies. With this theory the Court is not in accord and feels it necessary to cite only Board of Trade of City of Chicago v. Illinois Commerce Commission (Great Lakes Elevator Corporation v. Illinois Commerce Commission), 7 Cir., 156 F. 2d 33. Affirmed in part and reversed in part, Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447; Rice v. Board of Trade of City of Chicago, 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468. In that case the action was started in the District Court of the United States for the Northern District of Illinois, Eastern Division, to enjoin the Illinois Commerce Commission and the Attorney General for the State of Illinois from proceeding with threatened actions. The District Court dismissed the complaints. The Court of Appeals for the 7th Circuit reversed and granted an injunction. The United States Supreme Court affirmed in part and reversed in part on other grounds.

We are satisfied that this Court has jurisdiction to enjoin the activities of the defendants if an injunction should properly issue. Plaintiff claims that they will suffer irreparable injury because they will be forced to submit themselves to a non-jurisdictional board whose *recommendations* for the settlement of the dispute between the plaintiff and the Union will be made public. The activities of the arbitration board in Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, supra, resulted in an order which was final. The effect of public pressure resulting from the publication of the recommendations of the defendant fact-finding panel would compel the parties to settle their dispute on the basis recommended except as they might be in a position to resist public pressure which obviously the public utility cannot do. The plaintiff is entitled to negotiate an agreement with the Union after "free and unfettered collective bargaining", and as was said in Linde Air

**674**

Products Co. v. Johnson, D.C., 77 F. Supp. 656, 659:

"To urge, therefore, that the plaintiff herein must submit itself to a non-jurisdictional board and pursue the remedies afforded therein before it can apply for equitable relief seems utterly unsound. The damage which will result if plaintiff is required to submit itself to a non-jurisdictional board seems apparent. It would be required to pursue a futile course which would involve time and expense and for which there is no adequate remedy at law. The established relationships of employer and employee are illegally threatened. American Federation of Labor v. Watson, 327 U. S. 582, 595, 66 S.Ct. 761, 90 L.Ed. 873. It is entirely probable that irreparable injury would result. To proceed before a State Labor Board which has no jurisdiction, particularly under the circumstances herein, might well frustrate the entire purpose of the National Labor Relations Act and infringe upon plaintiff's rights under the Labor-Management Relations Act, 1947. The temporary injunction prayed for should be, and is, granted. It is so ordered."

■ For the reasons herein outlined the Court is satisfied: (1) it is not necessary to have a Three-Judge Court; (2) the activities of the plaintiff company affect interstate commerce. National Labor Relations Board v. Baltimore Transit Co., 4 Cir., 140 F.2d 51; Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364; St. John v. Wisconsin Employment Relations Board, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386; (3) Congress by its legislation has pre-empted the field of labor relations as regards interstate commerce; (4) the provisions of the Michigan Statute and the powers and duties granted to the defendant fact-finding commission are in conflict with the Labor Management Relations Act of 1947; (5) plaintiff should not be required to submit to a fact-finding commission which has no jurisdiction; (6) the plaintiff would suffer irreparable injury if an injunction were denied; (7) plaintiff is entitled to a temporary injunction restraining the defendants, individually and as a special commission, from entering upon or conducting any hearings, proceedings or investigations as required by the Statute of the State of Michigan.

The foregoing opinion shall constitute the Court's findings of fact and conclusions of law.

For the reasons herein stated plaintiff may present an order for a temporary injunction as prayed for in plaintiff's complaint.