**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WESTERN MEAT PACKERS, INC., Respondent.**

No. 8084.

United States Court of Appeals Tenth Circuit.

Sept. 7, 1965.

Margaret · M. Farmer, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Melvin Pollack, Washington, D. C., were with her on the brief), for petitioner.

Harold B. Wagner, Denver, Colo., for respondent.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring respondent to bargain collectively with the Amalgamated Meat Cutters and Butcher Workmen of North America, Local Union No. 634, AFL–CIO, as the duly designated bargaining representative of respondent's employees. The order provides for other customary remedial requirements and is based upon a Board finding that respondent violated section 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain collectively with the Union on or after April 25, 1963. Resistance to enforcement of the subject order is centered around the contention that the Union has never been validly designated as, and is not, the bargaining agent for respondent's employees.

Respondent is a processor of meat and meat products with principal place of business at Grand Junction, Colorado. On March 12, 1962, the Union filed a representation petition with the Regional Director of the Board seeking certification as the bargaining agent for respondent's employees. Upon being informed by the Director that the Board lacked jurisdiction because respondent was engaged in purely intrastate business, this petition was withdrawn. The Union then filed a similar petition with the Industrial Commission of Colorado seeking, under the compulsion of the Colorado Labor Peace Act,[1] an election to determine a collective bargaining representative. In compliance with the petition, the Colorado Commission conducted such an election on April 11, 1962. The Union lost this election.

On July 2, 1962, respondent received a federal meat inspection license and thereafter made out of state sales in excess of $110,000 per annum, thus becoming engaged in interstate commerce on and after such date. However, in October 1962 the Union again petitioned the Colorado Industrial Commission to conduct an election pursuant to the provisions of the Colorado Labor Peace Act. Such election was held on October 30 and 31, 1962, the Union won, and on November 5, 1962, the Colorado Commission certified the Union as the bargaining representative for respondent's employees.

From November 29, 1962, until about September 16, 1963, the parties engaged in on-again off-again bargaining sessions and negotiated successfully upon some proposals. On the latter date (some two months after the last previous contact between the parties) respondent's manager informed the Union that because the company was now engaged in interstate commerce, and for other reasons, a new election should be held and if the Union was successful a contract would be negotiated. The instant charge was almost immediately filed by the Union and, after a full hearing, the Board found that respondent had violated the National Labor Relations Act by refusing to bargain. The finding is dependent upon the validity of the Board's conclusion that the Union was the lawful bargaining representative of respondent's employees on and after October 31, 1962, the date of the second election conducted by the Colorado Industrial Commission.

■ Although the National Labor Relations Act has provided a formal mode for selection and rejection of bargaining agents through Board conducted elections, it does not provide that a union's majority status may not be established by other means. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 71–72, 76 S.Ct. 559, 100 L.Ed. 941. The Board, accordingly, has credited the results of state-conducted elections where such elections contained no irregularities and were sheltered by procedural safeguards of secrecy and fairness. The West Indian Co., 129 NLRB 1203; Bluefield Produce & Provision Co., 117 NLRB 1660; Olin Mathieson Chemical Corp., 115 NLRB 1501; T–H Products Co., 113 NLRB 1246. In its present petition the Board proceeds from the premise that the second state-conducted election was properly managed and properly reflected the will of respondent's employees and did, therefore, establish a bargaining agent which the Board could jurisdictionally recognize. We do not think the Board's decision gives proper recognition to the mandate of Sec. 9(c) (3) of the Act which has fixed the spacing of elections. Section 9(c) (3) provides in pertinent part:

"No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held."

■ The first state election, conducted April 11, 1962, was admittedly valid both procedurally and jurisdictionally. Respondent was then engaged only in intrastate commerce and the Board

---

1. Now codified as 80–4–1 to 22, Colo.Rev.Statutes, 1963.

had specifically denied its own jurisdiction because of that fact. But the second state election, conducted six months later, was valid only in the sense that it was fairly conducted and not in direct contravention of state law.[2] This election was not held by agreement or consent. Nor was it jurisdictionally valid for respondent was then engaged in interstate commerce and exclusive jurisdiction of its labor relations lay in the National Labor Relations Act and with the Board. San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Garner v. Teamsters, Chauffeurs, etc. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. While the Board has at least once accorded validity, despite preemption, to a consent election conducted by an outside governmental agency (Dèpartment of Labor of the Virgin Islands) it has at the same time recognized the impact of Sec. 9(c) (3) in its decision, West Indian Co., 129 NLRB 1203, and has only accorded the same effect to the results of state elections as it would to an election conducted by the Board itself. T–H Products Co., 113 NLRB 1246. In the case at bar the second state election was not by consent but upon Union petition; and had that petition been directed to the Board it would have admittedly been denied as prohibited by the 12-month election spacing period compelled by Sec. 9(c) (3) after the first and valid election of April 11. We hold that the Board, having jurisdiction, cannot compel recognition of a bargaining agent selected without the parties' consent through indirect procedures which the Board could not directly initiate under the provisions of the National Act.

We also find wanting the argument of Board's counsel that respondent has waived the right to question the effect of the state certification of the Union by bargaining with the Union. The decision of the Board is not premised upon waiver but upon what we hold to be an erroneous conclusion that the second state election was valid. Nor does the record contain evidence of an intentional relinquishment of a known right; to the contrary, the alleged unfair labor practice occurred while respondent was unadvised by counsel and under the shadow of state compulsion.

Enforcement is denied.

---

2. The Colorado Labor Peace Act provides in part: "The fact that one election has been held shall not prevent the holding of another election among the same group of employees, provided that it appears to the commission that sufficient reason therefor exists." 80–4–5(4), Colo.Rev. Statutes, 1963.